# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DAVID CASE and ASSOCIATED INVESTIGATORS, INC.,**

        **Plaintiffs,**

-vs-                              **Case No.  6:06-cv-832-Orl-31UAM**

**DONALD ESLINGER, CITY OF SANFORD, and FRANK DAVIS,**

        **Defendants.**

_____

# ORDER

This matter comes before the Court on Motions for Summary Judgment filed by Frank Davis (Doc. 58), Sheriff Donald Eslinger (Doc. 54) and the City of Sanford (Doc. 60) and Plaintiffs' Response thereto (Doc. 65).

## I. Background

Plaintiff David Case ("Case") is the president of Associated Investigators, Inc. ("Associated") which, from 1995 to early 2002, was primarily in the business of repossessing heavy trucks and trailers. However, in 2002, Case and Associated entered into a business venture with David Brannon ("Brannon") to operate an automobile transport business, Associated Transport. Plaintiffs loaned Brannon $85,000 to repair, insure and properly permit Brannon's trucks and trailers, and to hire drivers. To secure the loan, Brannon agreed to transfer the titles of three trucks to Associated. Additionally, Associated agreed to provide a newly purchased Peterbilt truck for use by Associated Transport. Once the business was able to earn enough money to repay

the $85,000 loan, Case and Brannon planned to create another, separate corporation, in which they would each own a 50% interest.

On May 11, 2002, Officer Frank Davis ("Davis") met with John Stein ("Stein"), a former employee of Brannon and Case who had recently been fired. Stein told Davis that Brannon was in possession of several stolen items, including a 1996 Peterbilt tractor that had a 1993 VIN on it, a 2000 stainless steel trailer with no VIN, and an electrical power meter. (Doc. 58-6 at 3-4, 6-8, and 9). Stein also accused Brannon of trying to hire someone to murder a man named Denver Triplett, and of transporting cocaine. (Doc. 58-6 at 10-11, 17-18). Throughout this first interview, Davis asks Stein about Case several times, but Stein does not incriminate him. In fact, Stein told Davis that

> Dave Case has nothing to do with nothing. He don't...he don't...he...he didn't even have wind of it until ...he didn't find out the truck was stolen 'til I told him like four or five days ago.
> . . . .
> And that's when Dave Case said he washed his hands, he was done with David Brannon, threw David Brannon out of his office and all that.

(Doc. 58-6 at 11).

On May 11, 2002, Stein showed Davis a Peterbilt tractor that had "Associated A.T. Transport" written on the doors. Davis called the National Insurance Crime Bureau ("NICB") and was told that the VIN on the tractor's dash belonged to a 1993 Peterbilt tractor. Following NICB's instructions to locate secondary VINs, Davis discovered a total of 4 different VINs. NICB informed Davis that one of the VINs, which appeared twice on the vehicle, belonged to a 1990 Peterbilt which had been reported stolen and later recovered by the Baltimore Police Department. Based on this information, Davis had the truck towed to the Sheriff's impound lot.

On May 14, 2002, Case met with Davis and Sgt. Berrios regarding the seizure of his Peterbilt tractor. Case explained his prior dealings with Brannon and presented Davis with all of his paperwork regarding the transfer of the Peterbilt. Case then voluntarily allowed officers to inspect the other two trucks Brannon had transferred to Associated, as well as all of the trucks located on Associated's property. After inspecting all of these vehicles, Davis informed Case that he found nothing of concern.

Davis then interviewed Stein twice on May 21, 2002. This time, Stein told Davis that Brannon *and* Case had instructed him to strip parts off of a blue Peterbilt truck before Case had to repossess it. (Doc. 58-8 at 7-8). Stein also stated that Case and Brannon told him to strip parts off of several other trucks that Case had repossessed, and that they were "doing some kinda title thing through the junk yard and the tow yard to get the title for [a red 1980 Peterbilt] illegally." (Doc. 58-8 at 9 and 13). During his 2nd interview on the 21st, Stein told Davis that Case and Brannon had instructed him to sign other people's names to two truck titles and a trailer title on March 29, 2002. (Doc. 58-9 at 2).

On May 28, 2002, Case contacted Davis to discuss a Kenworth tractor and trailer that he had repossessed from Brannon on March 1, 2002. Case told Davis that he had just discovered that Brannon switched the VINs on two trailers before Case repossessed the Kenworth tractor and attached trailer. Case told Davis that the rear tires and six rims had also been removed from the tractor before Case repossessed it. Case met with Davis that day, gave him two photos and a sworn statement. Davis instructed Case to secure the one suspect trailer that remained on his lot until Davis could have it impounded.

Davis interviewed Stein for a 4th time on May 29, 2002. At this interview Stein indicated that Case had admitted to him that he had stolen a red Peterbilt truck in Orlando. (Doc. 58-10 at 7). Stein also accused Case of sharing a stolen trailer with Brannon, of switching VIN plates on two trailers and of stealing a tag off one trailer to use it on another. (Doc. 58-10 at 8, 13 and 14).

On May 29th, Davis located the second suspect trailer at Adessa Auto Auction, along with a red Peterbilt truck that Stein claimed to have stripped parts from for Case. Over the next two weeks, Davis also verified that Fred's Tire Service had removed tires and six rims from a green Peterbilt truck at Brannon's request. An employee at Fred's Tire Service identified Case, Brannon and Stein from photos and indicated that all three had been present while they did the tire work for Brannon. The employee also told Davis that he had delivered the rims to Associated, where he also saw Case, Brannon and Stein.

In his final interview on June 14th, Stein essentially told Davis that Brannon and Case were working together on everything. That they swapped VIN plates together and removed parts from trucks together. On June 17, 2002 Davis arrested Case and seized several items belonging to Case and/or Associated, without a warrant, for passing a forged or altered instrument in violation of Fla. Stat. § 831.02, larceny of more than $300 but less than $2,000 in violation of Fla. Stat. § 812.014 and accessory after the fact in violation of Fla. Stat. § 777.03. These charges were eventually dropped when the States Attorney filed a *nolle prosequi*. Case spent 8 hours in jail and alleges that during his incarceration money and a credit card were stolen from his wallet. (Doc. 65 at 10).

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d

454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the

motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

## III. Legal Analysis

Case brings this action under 42 U.S.C. § 1983 ("§ 1983"), which provides a remedy to individuals whose constitutional rights have been violated under the color of law. Therefore, to establish a claim against any Defendant, Case must establish that his constitutional rights were violated. In particular, Case alleges violations of his Fourth Amendment right to be free from unlawful seizure of his person and/or property.

Davis argues that he is entitled to qualified immunity. In order to receive qualified immunity, "the government official must first prove that he was acting within [the scope of] his discretionary authority." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003). Once a defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id.* To determine whether qualified immunity is appropriate, the Court must ask two questions. First, whether, viewed in the light most favorable to the plaintiff, the evidence shows that Davis violated Case's constitutional rights. *Id.* Second, if a violation of a right can be made out, the Court must determine whether that right was clearly established. *Id.*

> In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause," that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff. *Kingsland v. City of Miami,* 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990)).
>
> To determine whether arguable probable cause exists, courts must look to the totality of the circumstances. At the summary judgment stage, courts view the totality of the

circumstances in the light most favorable to the nonmoving party. *See Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002); *Evans v. Stephens*, 407 F.3d 1272, 1277 (11th Cir. 2005). That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." *Evans*, 407 F.3d at 1278. Even though the "'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case," *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000), our analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff, *Skrtich*, 280 F.3d at 1299.

*Davis v. Williams,* 451 F.3d 759, 762-763 (11th Cir. 2006).

It is undisputed that Davis was acting within the scope of his discretionary authority when arresting Case and seizing his property. Therefore, the question this Court must answer then is whether Davis had arguable probable cause to arrest Case and seize property belonging to him and/or Associated.[1] Whether there was arguable probable cause to arrest Case depends upon what amounts to probable cause under Florida law. *Id.* at 764.

"[T]he standard for determining the existence of probable cause is the same under both Florida and federal law – whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998)(internal quotation marks omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 (1983). "[I]n making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's

---

[1]This Court's inquiry focuses on the first step of the qualified immunity analysis because "[t]here is no question that the second step - clearly established - is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 764 (11th Cir. 2006).

statement is reasonably corroborated by other matters within the officer's knowledge." *Id.* at 242

(internal quotation marks omitted). "It is enough, for purposes of assessing probable cause, that

corroboration through other sources of information reduced the chances of a reckless or

prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id*. at 244-45

(internal quotation marks omitted). In this matter, because Stein had recently been fired by Case,

"the informant involved is not an ordinary citizen, mere eyewitness, disinterested bystander or

victim whose statements are entitled to a presumption of veracity." *State v. Rivera*, 634 So. 2d

302, 304 (Fla. 5th DCA 1994). "Thus, the information [he] supplied to the police needed to be

independently corroborated to support probable cause." *Dial v. State*, 798 So. 2d 880, 883 (Fla. 4th

DCA 2001).

As discussed above, Davis was able to corroborate several of Stein's statements through

his own investigation. Davis also had evidence to contradict Case's statements that Brannon

removed rims and tires from the Kenworth tractor without his knowledge, which could reasonably

have led Davis to question other statements made by Case. Furthermore, Davis found that Case

was in actual possession of tires and rims that he reasonably believed to be stolen. Therefore, this

Court finds that Davis did have arguable probable cause to arrest Case and seize his property.

Consequently, Case has failed to establish a violation of his constitutional rights and all

Defendants are entitled to summary judgment.

**IV. Conclusion**

For the reasons stated herein, it is

**ORDERED** that Defendants' Motions for Summary Judgment (Docs. 54, 58 and 60) are

**GRANTED**. The Clerk is directed to enter judgment in favor of Defendants and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 9, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record